UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DONNIE RAY BAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:15-CV-145 |
| | ) (GUYTON) |
| ASSA- ABLOY, INC, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 15]. Before the Court is the Defendants' Motion for Summary Judgment [Doc. 34]. The Plaintiff filed a Response in opposition [Doc. 36], and the movants filed a reply [Doc. 37]. For the reasons set forth more fully below, the Defendants' motion [Doc. 34] will be **GRANTED**.

**I.     Relevant Facts**

The established and undisputed facts in this case are as follows. The Plaintiff, Donnie Ray Baker ("Baker") is a former employee of Yale Security, Inc. ("Yale"), a manufacturer of door locks and hardware. Baker was employed by Yale in approximately 1988. In 1992, Baker suffered an on the job injury which caused him to miss approximately three years of work. When Baker finally was released to return to work, with restrictions, there were no jobs he could

1

perform. Yale terminated Baker's employment on May 1, 1996. Baker accrued 7.75 years of credited service for retirement benefit purposes.

In February 1997, Baker sued Yale in this Court, asserting claims for discrimination on the basis of disability. Later that year, the parties entered into a settlement agreement to resolve the case. The Settlement Agreement and Release was signed by Baker on August 21, 1997. Mr. Baker received $2,000.00 payment. In exchange, he agreed to dismiss his lawsuit against Yale and to release all claims against Yale. The release paragraph includes a broad release of all claims, except that both parties agreed:

> that this release shall not be construed as a release by Baker of any legal rights he has or might possess under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et seq., as amended, pertaining to his statues [sic] as a participant in a retirement plan maintained, operated and/or sponsored by Yale Security.

Following the August 1997 settlement, Baker attempted to claim retirement benefits under Yale's retirement plan. Yale informed Baker that he had 7.75 years of credited service, which was less than the 10 years necessary for him to qualify for disability retirement benefits. Baker, however, continued to seek retirement benefits, including disability retirement benefits. No benefits were granted to him, because Yale had determined that he was not eligible. In 2000, ASSA-Abloy purchased Yale, and ASSA-Abloy remains the parent company of Yale. The Defendant, Barbara Cran ("Cran"), is the Manager for Benefits Administration for ASSA-Abloy.

In 2014, Baker began a series of communications with Cran, again requesting retirement benefits and disability retirements benefits. Specifically, Baker requested a one-time special lump-sum payment of all of his vested pension. Cran granted this request by letter dated

2

October 27, 2014. Cran calculated Mr. Baker's entitlement to benefits under the terms of the plan based on his 7.75 years of credited service with Yale. As a result, Baker was entitled to a lump-sum payment of $16,714.81 for pension benefits. Cran presented this to Baker as a full and final settlement of his claim for pension benefits under Yale's plan, and Baker accepted it as such. Cran, however, denied Baker's request for disability retirement benefits on the ground that Baker had 7.75 years of credited service, not the ten years required for those benefits.

Baker challenges the Defendant's position that he has 7.75 years of credited service. Baker claims that when he was hired by Yale in 1988, Jack Atkins, then the vice president of Human Resources for Yale, made an oral agreement with Baker that if Baker would cross a union picket line, Baker simply would be given 16 years of additional seniority for retirement benefit purposes, even though he did not actually work those years. Cran refused to allow Baker an additional 16 years of credited service, as there was no documentation of such and, in any event, the retirement plan based credited service on actual hours of service with Yale Security.

Baker presents two documents in support of his claim that at the outset of his employment he was "gifted" 16 years of credited service: his termination letter, and an Annual Statement of Credited Service from 1988-1989. There are two versions of the termination letter. The version of the termination letter on which Baker relies includes the following sentence: "Due to sixteen years seniority Yale Security, Inc., gave you, you are entitled to Disability Retirement Benefits." The original version of the termination letter, however, does not include the above-quoted sentence, which Defendants claim was inserted by Baker after receipt, on the second page between the last two paragraphs. There also are two versions of the Annual Statement of Credited Service from 1988-1989. The Annual Statement of Credited Service on

3

which Baker relies indicates that the "Total Years of Credited Service for Vesting as of 1-31-88 to 01-31-89" is 16.0 years and the "Total Years of Credited Service for Pension Accrual As of 01-31-88 to 1-31-89" is 16.4 years. By contrast, however, the original Annual Statement of Credited Service does not include any reference to 16 years of credited service. The original document has only .4 years of credited service. Defendants assert that Baker simply added a "16" in front of that number sometime after his receipt of the document.

## II.     Plaintiff's Claims

The Plaintiff objects to only having been given 7.75 years of credited service, as this resulted in a lower lump-sum payment and in the denial of Disability Retirement benefits. Baker asserts that these actions are grounds for a breach of contract claim and a disability discrimination claim.

## III.    Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., 475 U.S. at 587. To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

4

248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

### IV. Analysis of Claims

#### A. Breach of Contract Claim

Baker claims that Defendants have breached the 1997 Settlement Agreement and Release by not allowing him to participate in Yale Security's retirement plan. The Court, however, agrees with the Defendants that a breach of contract claim based on the denial of benefits under an ERISA plan is preempted by ERISA. See Gordon v. Barnes Pumps, Inc., 999 F.2d 133, 137 (6th Cir. 1993); Harper v. Occidental Petroleum Servs., Inc., 111 F.3d 131, at *2 (6th Cir. 1997). Accordingly, the Court must dismiss Baker's breach of contract claim. Hutchison v. Fifth Third Bancorp., 469 F.3d 583, 584 (6th Cir. 2006) (affirming dismissal of breach of contract claim because it was preempted by ERISA).

#### B. Settlement Agreement and Release

Moreover, Baker bases his breach of contract claim on one sentence in the

5

Settlement Agreement and Release, which simply provides that the broad release of all claims does not affect any right he might have under ERISA.

> [t]he parties agree that this release shall not be construed as a release by Baker of any legal rights he has or might possess under the Employment Retirement Income Security Act, 29 U.S.C. § 1001 <u>et seq.</u>, as amended, pertaining to his statues [sic] as a participant in a retirement plan maintained, operated and/or sponsored by Yale Security.

The Court finds that this provision does not confer on or grant to Baker any right with respect to participation in Yale Security's retirement plan. The provision states only that the release of claims does not operate to bar any claims that Baker has or might in the future have under ERISA because of his status as a participant in Yale Security's retirement plan. Therefore, based on this language, Defendants' benefits decisions concerning Baker do not constitute a breach of the Settlement Agreement.

Moreover, Baker's breach of contract claim rests on his allegation that he has been prohibited or prevented from participating in the plan:

> Q. Okay. Go back to Exhibit 1, which is your complaint - -
>
> A. Okay.
>
> Q. - - Page 5 of 9.
>
> A. Okay.
>
> Q. You note in here, starting at the top, that Barbara Cran denied you the extra credited service and disability retirement benefits - -
>
> A. From the - -
>
> Q. - - and she gave you the onetime lump-sum offer of sixteen thousand seven hundred fifteen dollars ($16,715).

6

A. Yes, sir.

Q. And she said that you had the right to request review of that denial. Right?

A. Yes, sir.

Q. Did you request review of that denial?

A. That's where I went and I filed - - it said I had a hundred and eighty days to request to be filed by the 6th of - - 27th of '15; and, by union book, I filed a federal suit. That's where I filed this complaint April the 1st of '15.

Q. So this complaint is your attempt to request review of that denial. Correct?

A. Correct.

Q. And, on down the page, five lines up from the bottom, you said you filed this civil suit for, in part and in whole, breach of contract and for discrimination against the disabled. Right?

A. Yes, sir.

Q. And we've talked about the breach of contract. That is the breach of the settlement agreement.

A. Right.

Q. Right? What is the discrimination against the disabled?

A. I have got a dis - - the disability. They refused for three years to - - to do anything besides deny me an opportunity to do a job in the - - in the - - in the company for - - when Dr. Wallace released me to go back to work, I was under the intentions of good faith to being put on one of the jobs that - - with my restrictions that I could do.
And, at the time, there was brass machining, which I was told I had to wait for an opening. I filed, through the union, to transfer to a drill press job or brass machining, a job that would fit my restrictions, which I was denied on the letter, if there was a job, I still wouldn't have it, or they wouldn't put me in it and. . .

7

Baker's claim must fail because it is factually inaccurate. Baker received a $16,714.81 lump-sum payment, which he accepted as full and final settlement of his claim for pension benefits under Yale Security's retirement plan. Baker actually concedes that he has been granted all benefits to which he was entitled based on his 7.75 years of credited service:

> Q. Let me ask - - let's go back to Exhibit 8, and let me ask you a couple more questions on it. So, if you flip to the third page of Exhibit 8 - -
>
> A. Okay. Third, second - - third page.
>
> Q. You see where it says: "Not eligible. Had less than ten years of service"?
>
> A. Right. Like in - -
>
> Q. Right?
>
> A. Uh-huh.
>
> Q. And, if you flip to the fourth page on the pension data record that you were talking about - -
>
> A. Right.
>
> Q. - - in 1988, it has you point-four years of credited service. Correct?
>
> A. That's what it says right there, yeah.
>
> Q. That's what it says.
>
> A. "For your accumulated credit service, point-four."
>
> Q. Not sixteen-point-four.
>
> A. There, then, that is going to Exhibit 7, Paragraph 4: "While all efforts have been made to report information accurately, the

accumulation and calculation of data and information can be wrong."

Q. But you - -

A. But it never - -

Q. But listen. On this pension data record, it has point-four for 1988. Correct?

A. That's what it says on the paper here, yeah.

Q. And, if you flip to the very last page, the left-hand side of the page, about a quarter of the way down, it says: "Service at Term: Seven-point-seven-five." Isn't that correct?

A. Yeah. To the right side, it says: "Seven-point-seventy-five."

Q. Uh-huh. And that is how many years of service that Ms. Cran concluded you had in 2014. Correct?

A. Correct.

Q. And that's how many years of service that Williams Holdings concluded you had in the letter that's Exhibit 7. Correct?

A. Of which - - yeah. They've got down - - they marked through the fifty-five, straight up sixty-five; and then: "Must have ten years of service to collect age sixty-two." It only has seven-point-seven-five, but - -

Q. So let me go back to Exhibit 6, which is Ms. Cran's letter.

A. Let me put this-away. Okay? I'm with you.

Q. Exhibit 6.

A. Okay.

Q. That's Ms. Cran's letter from 2014. The second page, after the Number 3, that full paragraph, beginning with the word: "Under."

A. Yes, sir.

9

Q. She says: "Under the terms of the plan, you cannot receive any credited service that is not based on your actual hours of service during your period of Yale Security employment." Do you have any reason to believe that that is not what the plan document says?

A. Well, I have not reason to believe that that's what their plan document says, but of what - - how would I say this? The Plaintiff, or Donnie R. Baker, received or I was told would receive and - - the benefits. And, as of their records, I'm treated as just a normal person, fired - - or terminated, I mean. I don't - -

Q. So, according to the company's records - -

A. - - the ASSA ABLOY's manager of benefits administration's records.

Q. Yes.

A. Okay.

Q. According to those records - - which, we believe, have you at seven-point-seven-five years of credited service. Right?
A. Right.

Q. Then you've gotten everything you're entitled to under the plan if you only had seven-point-seven-five years. Is that correct?

A. I'm not figuring it that way. I mean, it's - - I shouldn't - - it seven-point-five, with the way she figures. With just a normal person, with normal retirement benefits, that would be what they came up with, yes.

\* \* \*

Q. But my question is, assuming it was only seven-point-seven-five, assuming they were right - - and I know you say they're wrong - - but assuming they were right, then you've gotten everything you would have been entitled to under the plan as an employee with seven-point-seven-five years of credited service.

A. As a regular employee.

10

In summary, while Baker may allege that he was simply given, orally, 16 years of credited service at the beginning of his employment, he was not prohibited from participating in the retirement plan. Defendants have not breached the Settlement Agreement and Release. Baker received the lump sum retirement plan payment for which he negotiated and for which he released the Defendants. Baker and Yale Security, Inc., are the only parties to the Settlement Agreement and Release.[1]

C. **Disability Discrimination**

Baker contends that the Defendants have subjected him to "discrimination on the basis of disability" by denying his request for retirement benefits. Essentially, he is asserting that he was injured on the job and at some point thereafter treated "unfairly" by the Defendants. The Defendants have raised several grounds upon which this amorphous claim must be dismissed.

1. **Any claim under the Americans with Disabilities Act is barred.**

The Court finds that any employment-related disability discrimination claim by the Plaintiff must be dismissed for the following reasons:

> (a) Mr. Baker cannot demonstrate that he filed a Charge of Discrimination with the EEOC within 300 days of the date of his termination (May 1, 1996), which is a jurisdictional prerequisite for filing a claim under the Americans with Disabilities Act. Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 309 (6th Cir. 2000).

---

[1] It is not material to the Court's decision that Baker produced versions of his termination letter and his Annual Statement of Credited Service from 1988-1989 which have been altered from the originals of those documents. These altered documents, submitted by Baker in support his claim, are obvious forgeries, not the original documents. However, given the Court's decision to dismiss this case, the Court will decline to pursue the imposition of sanctions against this pro se Plaintiff.

(b) Even if Baker had filed an EEOC Charge, he did not file this lawsuit within 90 days from the date on which he received a Notice of Dismissal and Right to Sue. McGhee v. Disney Store, 53 F. App'x 751, 752 (6th Cir. 2002).

(c) ASSA-ABLOY and Ms. Cran were not Mr. Baker's "employer" and thus he cannot assert a claim against them under the Americans with Disabilities Act.

(d) In the 1997 Settlement Agreement and Release, Baker specifically released and gave up any claim that he might have had under the Americans with Disabilities Act, as follows:

"Baker. . . releases and forever discharges Yale Security. . . from any and all liability, claims or causes of action which Baker has now or which may hereafter accrue in connection with or related in any way to his employment by Yale Security and/or his termination from employment, including, without limitation, any claims of discrimination that may be brought pursuant to. . . the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq."

The undisputed facts clearly demonstrate that Defendants are entitled to judgment as a matter of law on any claim that Baker might be making under the Americans with Disabilities Act. The bottom line is that Baker has zero factual evidence which would support any claim of discrimination of any kind. Baker testified as follows:

> Q: My question, though, is what makes you think it's because of your disability as opposed to some other reason? I know that you have a disability, and I know that they - - they have denied you what you think you're entitled to. I understand those two things. But what do you have that you think ties those two together, the disability and the denial of benefits?
>
> A: That ties them together?
>
> Q: Yeah.
>
> A. I'm - - I just wasn't treated fairly. I mean - - that ties it together. I was not treated fairly. They didn't do what should have been done

12

of reporting the information of - - coming from Yale Security's human resources, going to the ASSA ABLOY retirement plan.

Baker has only a subjective, conclusory belief that disability discrimination occurred. There is no evidence in the record to connect Baker's general claim that he was treated unfairly to any disability. This is insufficient, as a matter of law, to defeat summary judgment. Holleman v. BellSouth Telecommunications, Inc., No. 3:09-CV-311, 2011 WL 3876590, at *11 (E.D. Tenn. Sept. 1, 2011) (citing Mitchell v. Toldeo Hosp., 964 F.2d 577, 585 (6th Cir. 1992)) ("[The] Sixth Circuit has recognized that such conclusory allegations, subjective beliefs, and inadmissible hearsay do not create genuine issues of material fact that may be used to defeat a motion for summary judgment.").

**V.  Conclusion**

For the reasons set forth above, the Defendants' motion **[Doc. 34]** is **GRANTED** and the Plaintiff's claims are **DISMISSED with prejudice**.  An appropriate Order shall enter.

**ORDER ACCORDINGLY:**

ENTER:

*/s/ Bruce Guyton*
United States Magistrate Judge

13